# LAW OFFICES OF JOEL B. RUDIN, P.C.

CARNEGIE HALL TOWER
152 WEST 57TH STREET
EIGHTH FLOOR
NEW YORK, NEW YORK 10019

TELEPHONE: (212) 752-7600
FACSIMILE: (212) 980-2968
E-MAIL: jbrudin@rudinlaw.com

JOEL B. RUDIN

HARAN TAE
JACOB "COBY" LOUP
JONATHAN G. HILES

GEORGE R. GOLTZER
(Of Counsel)
PARTHA SHARMA
(Paralegal)

December 20, 2019

**ECF**

Honorable Steven M. Gold
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  *Negron v. City of New York et al.*
 Case No. 18-cv-6645 (NGG) (SMG)

Dear Judge Gold:

I write to respectfully request the Court's leave to file the enclosed six-page letter-motion seeking the imposition of sanctions against Defendants for their failure to (1) comply with the Court's order directing Defendants to produce satisfactory Rule 30(b)(6) witnesses, or, alternatively, sworn statements, explaining their failure to disclose requested NYPD documents, and (2) disclose four categories of additional documents or information requested by Plaintiff. The additional pages are necessary because of the need to recount the long history of Plaintiff's discovery demands and Defendants' noncompliance in this matter; to identify the numerous deficiencies in the testimony from Defendants' Rule 30(b)(6) deposition; and to describe, at least briefly, each of the four additional areas of Defendants' noncompliance.

Thank you for your Honor's consideration.

Respectfully submitted,

/s/

Joel B. Rudin

Enclosure

cc: Morgan McKinney (via ECF)
 Elissa Fudim (via ECF)
 *Counsel for Defendants*

# LAW OFFICES OF JOEL B. RUDIN, P.C.

CARNEGIE HALL TOWER
152 WEST 57TH STREET
EIGHTH FLOOR
NEW YORK, NEW YORK 10019

TELEPHONE: (212) 752-7600
FACSIMILE: (212) 980-2968
E-MAIL: jbrudin@rudinlaw.com

JOEL B. RUDIN

HARAN TAE
JACOB "COBY" LOUP
JONATHAN G. HILES

GEORGE R. GOLTZER
(OF COUNSEL)

PARTHA SHARMA
(PARALEGAL)

December 20, 2019

**ECF**
Honorable Steven M. Gold
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Negron v. City of New York et al.*
      Case No. 18-cv-6645 (NGG) (SMG)

Dear Judge Gold:

I write to respectfully request that the Court strike Defendants' answer as to our claims against Defendant City of New York, based on Defendants' unjustifiable failure to (1) comply with the Court's order directing Defendants to produce satisfactory Rule 30(b)(6) witnesses, or, alternatively, sworn statements, explaining their failure to disclose requested NYPD documents, and (2) disclose four categories of additional documents or information requested by Plaintiff.[1] My office has conferred in good faith with opposing counsel numerous times about each of these issues in an attempt to avoid this motion, but the Court's intervention is now necessary.

**A.    The NYPD documents**

This § 1983 action arose out of the wrongful conviction of Plaintiff Julio Negron for attempted murder, based on the shooting of Mervin Fevrier on February 6, 2005, in front of Mr. Negron's Queens apartment in the NYPD's 104th Precinct. The same day Negron was arrested for the shooting, his downstairs neighbors, Fernando Caban and Monica Guartan, were also arrested, for stashing a cache of weapons on the roof of a nearby building. The New York Court of Appeals eventually reversed Negron's conviction based on, *inter alia*, the prosecution's withholding of documents pointing to Caban as the true shooter.

On April 4, 2019, we served a discovery demand on Defendants for "*[a]ll documents* in the possession, custody, or control of the New York City Police Department" concerning both

---

[1] We are filing this motion now because the associate from my office assigned to this case will be out of the office next week. However, we have no wish to force anyone to work over the holidays, and we will consent to a reasonable extension of time for Defendants to file their response.

Law Offices of Joel B. Rudin, P.C.

Honorable Steven M. Gold
December 20, 2019
Page 2

the Negron and Caban/Guartan investigations (emphasis added). In our motion to compel of November 8, 2019, we documented how Defendants had, to that date, failed to disclosed either the requested records or any sworn explanation for their noncompliance, despite our repeated inquiries, the agreed-upon setting of deadlines, and their representations that sworn explanations were forthcoming. *See* ECF No. 25. Defendants did not respond to our motion to compel.

During a November 15 telephone conference, the Court ordered Defendants to produce witnesses for a Rule 30(b)(6) deposition, at their expense, to explain their failure to produce the requested NYPD documents, *see* Tr. of Conf. at 17, or, alternatively, to produce "a detailed affidavit that satisfies the plaintiff between now and [the noticed deposition date]," *id.* at 18. The Court threatened "default," "contempt," or "at least spoliation sanctions" for noncompliance. *Id.* at 20-21. The Court ordered the deposition to be held on December 16. *See id.* at 46.

As ordered, we served our Rule 30(b)(6) notice, enclosed here as Exhibit 1, on November 18—four weeks before the deposition. As of December 5, we had received no sworn statements, so we wrote to ask if Defendants intended to produce any. The next day, a Friday, they provided a declaration by Lt. Steven Weiss, commanding officer of the 104th Precinct, enclosed here as Exhibit 2. The next Monday, December 9, we sent Defendants a letter, enclosed here as Exhibit 3, explaining why the declaration did not satisfy our April 4 discovery demand or the Court's November 15 order. On December 10, opposing counsel told us they objected to the scope of our deposition notice and, barring our consent to limit its scope, they would move for a protective order. Lacking our consent, they so moved on December 12. *See* ECF No. 31. Under the Local Rules, our response was due December 16, the day of the deposition. In order to meaningfully respond, we rushed to file it on December 13. As we explained in that response why Defendants' motion was meritless, *see* ECF No. 33, I do not retread that ground here.

On December 16, Defendants produced a single witness for the deposition: the same Lt. Weiss whose declaration they had provided. Before the deposition began, however, opposing counsel insisted on calling the Court for a ruling on their motion for a protective order. The Court denied the motion as untimely. See Tr. of Weiss Depo., Exhibit 4, at 5-6, 9.

Lt. Weiss was not prepared to address, and did not adequately address, several of the topics noticed in our Rule 30(b)(6) deposition, and opposing counsel sought to limit his testimony accordingly. For instance, our notice asked for testimony about "the names and titles of all persons who conducted a search for responsive documents" for both the Negron and Caban/Guartan investigations. Exhibit 1 at 3. However, opposing counsel stated she was "limit[ing] the scope" of Lt. Weiss's testimony to "*his personal search*" for "the Negron case file."[2] *Id.* at 20 (emphasis added). Lt. Weiss was thus not prepared or designated to "testify

---

[2] Lt. Weiss did testify that, eventually, he took the same steps to locate the Caban/Guartan documents as he did the Negron documents, after being asked to also search for the Caban/Guartan documents in "November or December." *See* Exhibit 4 at 40, 43.

Law Offices of Joel B. Rudin, P.C.

Honorable Steven M. Gold
December 20, 2019
Page 3

about information known or reasonably available to the organization," as required by Rule 30(b)(6); nor was any other witness so designated. When asked whether he had inquired or learned about any efforts other than his own to locate documents responsive to Plaintiff's request, Lt. Weiss answered (after opposing counsel objected) that he had learned only of the earlier, minimal efforts of Detective Louis Lodato (whose declaration Defendants first disclosed as an attachment to their motion of December 12, *see* ECF No. 31, Ex. C). *See* Exhibit 4 at 17-18. He did not learn about any efforts of any other person to locate responsive documents.[3]

Lt. Weiss also made clear that his own search was not "complete and exhaustive," as he claimed in his declaration, Exhibit 2 ¶ 10, and did not extend to "all documents" in the possession of the NYPD, as we had requested. He testified he had not conducted or requested any searches beyond what was in his declaration, except for a query of the NYPD's computerized case management system, which, he learned, the investigations in question predated. *See* Exhibit 4 at 43-44. Regarding his "general request" to the "Criminal Records Section," Exhibit 2, ¶ 9, his "limited" understanding of that unit was that in 2005 and 2006, complaint reports (UF-61s) and follow-up investigative reports (DD5s) were forwarded to them and archived on microfilm, Exhibit 4 at 40; *see id.* at 42. He was told the unit had no records from the Negron or Caban/Guartan investigations except a lone complaint report. *See id.* at 41. However, he couldn't remember who he spoke to at the unit and didn't know anything about its record retention policies or what steps they took to answer his request. *See id.* at 42-43, 60.

Lt. Weiss failed to conduct searches that he himself acknowledged may have led to the discovery of responsive documents. He was aware that many police documents from 2005 and 2006 contained duplicate and triplicate carbon copies that would "go somewhere else" other than the detective's file, *id.* at 37, but he did not extend his search to any of those locations—e.g., the Borough Robbery Squad or the property clerk—except for a fruitless request to the Criminal Records Section, *see id.* at 43-44. Regarding his inspection of 19 boxes he learned were sent to storage, he did find detective's files for *other* investigations of the 104th Precinct from 2005, but not the Negron or Caban/Guartan files. *See id.* at 53-54. He testified he could think of only three explanations for his failure to locate the Negron or Caban/Guartan detective's files: either they were in the possession of the D.A.'s Office or the respective lead detectives, or else they were "inadvertently disposed of." *Id.* at 54. He did not, however, try to find out if the D.A.'s Office or the case detectives had either of the detective's files. *See id.* at 54-55.

Early in the deposition, opposing counsel also purported to limit Lt. Weiss's testimony to his "personal experience" of NYPD record retention policies "back in 2005," *id.* at 20, but Lt. Weiss testified he did not know what such policies were, *see id.* at 19, 26. He had reviewed only "recent" NYPD policies; opposing counsel said Defendants "could pull those older policies, but

---

[3] At the deposition, opposing counsel permitted my office to inspect roll call records of the 104th Precinct that were one component of the dispute over NYPD documents. These records appeared to be satisfactory, so Lt. Weiss was not asked about the roll call records.

LAW OFFICES OF JOEL B. RUDIN, P.C.

Honorable Steven M. Gold
December 20, 2019
Page 4

[they] would need more time." *Id.* at 21. With regard to the current policies, Lt. Weiss testified that they bar the destruction of detective's files for felony cases, but he didn't know whether the NYPD generally, or the 104th Precinct specifically, had such a policy before 2017. *Id.* at 65-67. He also did not know whether any detective's files had been intentionally destroyed at the 104th Precinct before 2017. *Id.* at 67. And he was not aware of any policy or practice of the 104th Precinct to make a record when documents were transferred outside of the precinct house. *See id.* at 44-45. Even when boxes containing detective's files were sent to off-site storage, each box was labeled only with "general description" of its contents. *See id.* at 47.

As is clear from our initial motion to compel, our response to Defendants' untimely motion for a protective order, and Lt. Weiss's deposition, Defendants' response to Plaintiff's discovery demand and the Court's November 15 order has been wholly inadequate, and a strong sanction is warranted, as I argue in Section C, below.

**B.     The other outstanding discovery**

   **1.     Documents of the Queens D.A.'s Office**

Also discussed during the November 15 conference with the Court was our motion of October 11, 2019, in which we moved to compel production of dozens of pages of documents sealed under either N.Y. C.P.L. § 160.50 or the state statute protecting grand jury materials, as well as certain work product. *See* ECF No. 18, at 1-3. In Defendants' response of October 25, they agreed to produce the § 160.50 documents and grand jury materials upon the entry by the Court of an unsealing order. *See* ECF No. 22, at 1-2. On a November 19 phone call between the parties, Defendants also agreed to disclose certain work product upon the entry of such an order.

The Court entered the unsealing order on November 22. *See* ECF No. 29. On December 5, we wrote to Defendants complaining that they had not disclosed any of the documents they had agreed to provide upon entry of the order. We raised this issue again on December 10 via telephone and yesterday via email. Yesterday, they provided the work product but told us they were still working with the Queens D.A.'s Office to obtain the § 160.50 documents and grand jury materials that they had, eight weeks earlier, agreed to produce.[4]

---

[4] The disclosure, finally, of the work product dramatizes the consequences of Defendants' delays in this case, as it contains material evidence that is only now coming to light—namely, a notation by Defendant O'Connor, who prosecuted both Negron and third-party suspect Caban, describing Caban and Guartan as having "stashed a whole heap of guns and counterfeit money on their neighbor's roof *when they thought the cops were on to them*" (emphasis added). It was, in part, O'Connor's suppression of other, similar evidence of Caban's consciousness of guilt that led the Court of Appeals to reverse Plaintiff's conviction. Contemporaneous documentation of O'Connor's awareness of this evidence is plainly discoverable.

Law Offices of Joel B. Rudin, P.C.

Honorable Steven M. Gold
December 20, 2019
Page 5

### 2. Inventory list

At his June 2019 deposition, Defendant O'Connor testified that, during Plaintiff's criminal prosecution, he prepared at least two "inventory lists" memorializing document disclosures he made to the defense—one that has been disclosed in the present case and contains no reference to the *Brady* material the New York Court of Appeals said was suppressed, and one, never disclosed, that allegedly records O'Connor's disclosure of that *Brady* material. At the deposition, I requested that Defendants disclose any such list to us. On December 5, having received no such document, we wrote to Defendants again requesting either the list, or, in the alternative, a sworn statement from an appropriate official of the Queens D.A.'s Office explaining the failure to disclose such a document. As of today, we have received neither the document nor the sworn explanation of the absence of this critical document.

### 3. Addresses and telephone numbers of two witnesses noticed under Rule 26

On June 24, 2019, Defendants disclosed Mervin Fevrier, the victim of the shooting, under Rule 26(a)(1)(A)(i), but did not, as required by that rule, provide ("if known") his address and telephone number. Mr. Fevrier's telephone number, at least, is known to opposing counsel, because they noticed his deposition (but have since indicated they are unsure whether they'll proceed with it) and have contacted him regarding scheduling. We requested Mr. Fevrier's address and telephone number on December 5, 10, and 18, but Defendants have not provided it.

On November 18, 2019, Defendants disclosed the Honorable Gregory Lasak, a former New York Supreme Court Justice who presided over Plaintiff's criminal trial, under Rule 26(a)(1)(A)(i); soon after, they indicated they might call him to testify at trial.[5] We requested Justice Lasak's address and telephone number on November 20 and December 5, 10, and 18, so that we could interview him and potentially serve him with a document and deposition subpoena. Defendants have not provided this information.

### 4. Subpoenaed documents of Plaintiff's criminal trial attorneys

On October 30, 2019, Defendants noticed document subpoenas to be served on Plaintiff's criminal trial attorneys; the return date on the subpoenas was November 29, 2019. At Plaintiff's deposition on December 6, Defendants' counsel indicated they had received these documents. When we told them we had not received copies (in our initial discovery demands we requested all documents Defendants received via subpoena), they said they would forward copies. We inquired again about these documents yesterday, noting that we needed them immediately as the

---

[5] In his order denying Plaintiff's CPL 440 motion, including the *Brady* claim, Justice Lasak claimed he possessed evidence that the People had, in fact, disclosed the exculpatory material in question—a finding the Court of Appeals rejected because there was no support in the record for it. Nevertheless, Defendants apparently are considering calling Justice Lasak to make the same claim at trial in this case.

LAW OFFICES OF JOEL B. RUDIN, P.C.

Honorable Steven M. Gold
December 20, 2019
Page 6

attorneys' depositions were scheduled for the first half of January. As of today, Defendants have still not provided the documents.

**C.      Request for sanctions**

Fed. R. Civ. P. 37(b)(2)(A) authorizes the Court to impose sanctions—including but not limited to the "striking [of] pleadings"—on a party who fails to obey a discovery order. The Court "has 'wide discretion in imposing sanctions under Rule 37.'" *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (quoting *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007)). A list of relevant, but "not exclusive," factors to be considered when choosing a sanction includes "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Id.* (internal quotation marks omitted). If the Court imposes sanctions under Rule 37, it also "must" order the sanctioned party "to pay the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(b)(2)(C). Additionally, "[e]ven in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002).

Defendants' failure to adequately respond to Plaintiff's request for NYPD documents calls for strong sanctions. More than eight months have passed since Plaintiff's initial request. Defendants were warned the Court would impose sanctions, including possibly default, if they did not comply with the November 15 order. Nevertheless, they were willfully dilatory and noncompliant, as evidenced by their untimely motion for a protective order and their production of a single Rule 30(b)(6) witness who was unprepared to address numerous topics raised in Plaintiff's deposition notice. Further, the Court "is free to consider the full record in the case in order to select the appropriate sanction," *S. New England Tel. Co.*, 624 F.3d at 144, and the deficiencies outlined in Section B of this letter, above, reinforce the need for a heavy sanction.

Accordingly, we respectfully request that the Court strike Defendants' answer as to the claims against Defendant City of New York. Any lesser sanction would be insufficient. An award of attorneys' fees alone would provide no relief for Mr. Negron, who is the one being prejudiced by Defendants' delays. An adverse inference with respect to the NYPD documents is warranted but insufficient, in part because Plaintiff will almost certainly be entitled to such an inference at trial anyway, given that most of the responsive NYPD documents appear to be unaccountably missing. And a contempt sanction would not account for the months of delays and wasteful litigation that have already occurred because of Defendants' noncompliance.

Thank you for your Honor's consideration.

LAW OFFICES OF JOEL B. RUDIN, P.C.

Honorable Steven M. Gold
December 20, 2019
Page 7

                                                Respectfully submitted,

                                                /s/

                                                Joel B. Rudin

cc:      Morgan McKinney (via ECF)
           Elissa Fudim (via ECF)
           *Counsel for Defendants*