UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

JULIO NEGRON,

                Plaintiff,

- against -

THE CITY OF NEW YORK, PATRICK O'CONNOR, in his individual and official capacities, and ROBERT MOSCOSO, in his individual and official capacities,

                Defendants.
------------------------------------------------------------x

**NOTICE OF DEPOSITION OF DEFENDANT CITY OF NEW YORK PURSUANT TO FED. R. CIV. P. 30(b)(6)**

No. 18-cv-6645 (NGG) (SMG)

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and an order of the Court, issued orally on a telephone conference of November 15, 2019, Plaintiff Julio Negron, by his attorney, Law Offices of Joel B. Rudin, P.C., will take the deposition upon oral examination of Defendant City of New York before a notary public of the State of New York or some other duly authorized person, at the following place and time:

    Law Offices of Joel B. Rudin
    Carnegie Hall Tower
    152 West 57th Street, 8th Floor
    New York, New York 10019

    December 16, 2019, at 10:00 a.m., and continuing from day to day until completed.

The subject matters of the deposition—or, if necessary, depositions, as provided by Rule 30(b)(6)—will include the following:

First, with respect to Plaintiff's discovery request of April 4, 2019, for all documents in the possession, custody, or control of the New York City Police Department ("NYPD") concerning (a) the investigation of the shooting of Mervin Fevrier on February 6, 2005 (the "Shooting"); (b) the arrest, prosecution, and conviction of Julio Negron in connection with the Shooting; (c) the arrests of Fernando Caban and Monica Guartan in Queens on or about February 6, 2005; (d) the ensuing prosecution of Caban and Guartan under Indictment No. 396-05; and (e) the investigation of any other person in connection with the Shooting:

1. Document retention policies and practices:

    a. What is the NYPD's policy or practice for retaining and maintaining such documents? What, if any, statutes, rules, regulations, internal policies, etc. impose an obligation on the NYPD to retain such documents? Does the NYPD have any policy or practice of routinely destroying any documents—e.g., after they have been retained for a certain amount of time?

    b. What is the policy or practice of the NYPD with respect to where such documents are stored? How are such documents classified or organized for storage? Are they filed under a particular name? If so, is it the name of the complaining witness or someone else? Is storage of such documents routinely, or ever, outsourced to a third-party vendor?

    c. Representatives of the NYPD commonly refer to documents regarding a particular case being stored in the "detective's file." What documents are routinely stored in the detective's file? Other than the detective's file, are there other locations, either physical or digital, where documents concerning police investigations are retained? What are such other locations?

2. The search for responsive documents in the present case:

    a. What is the NYPD's policy or practice for searching for documents in its possession requested by civil plaintiffs? What, if any, statutes, rules, regulations, internal policies, etc. govern the NYPD's searches

        for such documents? What is the NYPD's policy or practice for documenting searches for such documents?

    b. Provide the names and titles of all persons who conducted a search for responsive documents. Provide a detailed description of the steps such persons took to locate such documents. At what physical locations, if any, did they search for such documents? On what digital systems, if any, did they search for such documents? When did they conduct such searches? Specifically, when did they begin their searches, and when did they conduct follow ups, if any? How did they document their searches?

    c. If responsive documents were or may have been stored by a third-party vendor, provide a detailed description of all steps such persons took to retrieve the responsive documents from the vendor.

3. The failure to disclose responsive documents in the present case:

    a. Were any responsive documents destroyed? If so, who destroyed them? When were they destroyed? Why were they destroyed? How were they destroyed?

    b. Were any responsive documents lost? If so, who lost them? When were they lost? Why were they lost? How were they lost?

Second, with respect to Plaintiff's discovery request—encompassed within the above-described request of April 4, 2019, and specifically requested via email on May 17, 2019, and via formal letter on July 27, 2019—for all roll call records of the NYPD 104th Precinct for February 5, 6, and 7, 2005:

1. Document retention policies:

    c. What is the NYPD's policy or practice for retaining and maintaining such documents? What, if any, statutes, rules, regulations, internal policies, etc. impose an obligation on the NYPD to retain such documents? Does the NYPD have any policy or practice of routinely destroying such documents—e.g., after they have been retained for a certain amount of time?

    a. What is the policy or practice of the NYPD with respect to where such documents are stored? How are such documents classified or

                organized for storage? Is storage of roll call records routinely, or ever, outsourced to a third-party vendor?

2. The search for responsive documents in the present case:

    a. Provide the names and titles of all persons who conducted a search for responsive documents. Provide a detailed description of the steps such persons took to locate such documents. At what physical locations, if any, did they search for such documents? On what digital systems, if any, did they search for such documents? When did they conduct such searches? Specifically, when did they begin their searches, and when did they conduct follow ups, if any? How did they document their searches?

    b. If responsive documents were or may have been stored by a third-party vendor, provide a detailed description of all steps such persons took to retrieve the responsive documents from the vendor.

    c. On August 13, 2019, the NYPD produced certain responsive roll call records of the 104th Precinct, but the roll call records listed only members of the detective's squad, and only for the dates of February 6-12, 2005. Why was the NYPD able to produce those documents but has still not produced the requested roll call records for either (i) the detective's squad for February 5, 2005, or (ii) non-detective police officers for February 5-7, 2005?

3. The failure to disclose responsive documents in the present case:

    a. Were any responsive roll call records destroyed? If so, who destroyed them? When were they destroyed? Why were they destroyed? How were they destroyed?

    b. Were any responsive roll call records lost? If so, who lost them? When were they lost? Why were they lost? How were they lost?

                                    \*   \*   \*

In accordance with Rule 30(b)(6), Defendant City of New York is hereby requested to designate one or more officers, directors, managing agents, or other persons who can testify about information known or reasonably available to the organization about the subject matters listed above.

4

The deposition(s) will be recorded by stenographic means and will continue day to day, at 10:00 a.m., until complete.

Dated: New York, New York
November 18, 2019

/s/ Joel B. Rudin

JOEL B. RUDIN
Law Offices of Joel B. Rudin, P.C.
Carnegie Hall Tower
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
jbrudin@rudinlaw.com
*Attorney for Plaintiff*

To: Morgan McKinney
Elissa Fudim
Assistants Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007

*Attorneys for Defendants*