

**THE CITY OF NEW YORK**

| | | |
|---|---|---|
| **JAMES E. JOHNSON**<br>*Corporation Counsel* | **LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | **ELISSA P. FUDIM**<br>*Senior Counsel*<br>phone: (212) 356-2335 |

February 7, 2020

**VIA ECF**
Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:   <u>Julio Negron v. City of N.Y., et al., 18-cv-06645-NGG-SMG</u>

Your Honor:

        Defendants write pursuant to Federal Rule of Civil Procedure 72(a) to respectfully object to Magistrate Judge Gold's Decision, dated January 17, 2020, denying in part and granting in part defendants' motion to compel plaintiff to answer deposition questions relating to his discussions with his criminal defense attorneys about the underlying criminal prosecution,[1] and to compel plaintiff (and his criminal defense attorneys) to produce documents relating to the underlying criminal case that were withheld as privileged as work product (WP) or attorney-client (AC) communications. <u>See</u> Transcript of Proceedings, attached hereto as Exhibit A. As set forth below, plaintiff waived WP / AC privilege in this case by the very nature of his claims in this lawsuit and by selectively disclosing privileged communications. Further, defendants have a substantial and compelling need for the disclosure of the documents under Fed. R. Civ. P. 26(b)(3).

**FACTUAL BACKGROUND**

        On February 6, 2005, plaintiff was arrested for shooting Mervin Feverier following a traffic dispute near the intersection of Woodward Avenue and Menahan Street in Queens, which was across the street from plaintiff's and his then girlfriend's apartment[2]. D.E. #1, ¶¶ 2, 24, 32. At the scene of the shooting, police recovered three .45 mm shell casings. <u>Id</u>., ¶ 31. At approximately 8 p.m. on the same day of the shooting, while police were present at the scene, a woman who lived in a connected building next door, told police that a man and a woman

---

[1] In addition, we submit that plaintiff's criminal defense attorneys, who are scheduled to be deposed, should similarly be compelled to answer questions regarding their knowledge of certain matters , including their work-product and communications with plaintiff and his wife regarding the underlying criminal prosecution.

[2] During the pendency of the criminal proceedings, plaintiff married this woman.

carrying multiple plastic bags had forced their way into her apartment, demanded access to her roof, and directed her to leave the roof door unlocked. Id., ¶¶ 71-73. The police searched the roof and discovered the plastic bags filled with weapons, armor, counterfeit money and ammunition, including .45-claiber bullets. Id., ¶¶ 78, 79. Fernando Caban and Monica Guartan were later identified as the individuals who forced their way into the neighbor's apartment, and Caban was later arrested and charged with various crimes associated with the contraband found on the roof. Id., ¶¶ 75, 82. Caban and Guartan lived in another apartment below Negron's and his then-girlfriend's (now wife's) apartment. Id., ¶ 75.

Feverier testified before the grand jury that he had positively identified plaintiff in a line-up. Id., ¶ 84. Feverier also testified at plaintiff's criminal trial, identifying plaintiff as the shooter. Id., ¶¶ 6, 98. Plaintiff's criminal defense attorney sought the Court's permission to introduce evidence that Caban was the shooter. Id. at 103. His attorney knew that Caban resembled plaintiff, lived in the same building as plaintiff and his girlfriend, and knew that Caban had been arrested for the cache of weapons found on a rooftop connected to that building. Id., ¶ 104. But, according to plaintiff, his attorney did not know that Caban had attempted to hide the weapons at the same time that police investigating the shooting were gathered outside the building, or that the items recovered included .45-caliber ammunition. Id., ¶ 104. The Court precluded plaintiff from introducing any evidence of Caban's possible culpability. Id., ¶ 109. Plaintiff was convicted of attempted murder on March 27, 2006 and sentenced to 12 years. Id., ¶¶ 125-126.

On November 23, 2015, the Court of Appeals vacated plaintiff's conviction and ordered a new trial, and on September 6, 2017, the indictment against plaintiff was dismissed. Id., ¶¶ 150, 154, 162. Now, in this case, plaintiff alleges that defendants coerced Feverier's line-up identification of plaintiff, and improperly withheld exculpatory evidence, viz. evidence relating to the arrest of Caban. Id., ¶¶ 3-6, 69, 78-92, 104-108.

Defendants counter that there were no improprieties in the line-up viewed by Feverier, and contrary to plaintiff's claim, Feverier consistently identified plaintiff as the shooter from the first time he viewed the line-up. Further, defendants contend that there was no Brady violation in that (i) the information pertaining to the circumstances of Caban's arrest and the ammunition recovered was disclosed to plaintiff's criminal defense attorney, and that (ii) plaintiff's criminal defense attorney had knowledge of these facts anyway – Caban not only lived in the same house as plaintiff and his girlfriend, Caban was plaintiff's girlfriend's brother and plaintiff's brother-in-law.

Thus, as to plaintiff's Brady claim (premised upon information related to Caban's arrest), this case will hinge upon what documents plaintiff's criminal defense attorneys had, and equally significant, what information they knew.

**PROCEDURAL BACKGROUND**

On December 12, 2019, defendants moved to compel plaintiff to fully and completely answer deposition questions relating to his discussions with his criminal defense attorneys about the underlying criminal prosecution, and to compel plaintiff (and his criminal defense attorneys) to produce documents relating to the underlying criminal case that were withheld as privileged as WP / AC. See D.E. # 32. Plaintiff opposed that motion (D.E. # 35) and defendants replied (D.E.

# 38). On January 31, 2020, Magistrate Judge Gold held oral argument on this (and other) motions. See Ex. A. He denied defendants' motion, with one narrow limitation. He ruled that although none of the privileged documents should be disclosed, plaintiff's criminal defense attorneys must be familiar with their files and be prepared to answer any question that is phrased "Did you know X" or "Were you aware of Y". If the attorneys answer "yes", then defendants can ask "did you learn X from a source other than plaintiff", and the attorney must answer that question. While a "no" answer will necessarily reveal that the information was communicated by plaintiff, defendants cannot ask that question directly. Id. at 16-17, 24-27. This decision was clearly erroneous and contrary to law.

## LEGAL STANDARD

Federal Rule of Civil Procedure 72(a) and the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(A), provide that a district court shall reverse a magistrate judge's order regarding a non-dispositive matter only where the order is "clearly erroneous or contrary to law." Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007). Pretrial discovery matters are "non-dispositive" and thus must be reviewed under this standard. Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990). When considering objections to a discovery order issued by a magistrate judge, the District Court shall "modify or set aside any part of the order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); see 28 U.S.C. § 636(b)(1). "An order is clearly erroneous if the reviewing court is left with the definite and firm conviction that a mistake has been committed." MacNamara v. City of N.Y., 249 F.R.D. 70, 77 (S.D.N.Y. 2008) (internal quotations and citations omitted). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." Id.

## ARGUMENT

To establish a Brady violation, plaintiff must prove not only that the prosecution withheld material facts, but also that plaintiff and his attorneys lacked knowledge of those facts. Trombetta v. California, 467 U.S. 479, 488-89 (1984). To be clear, there is no Brady violation where the criminal defendant (here plaintiff) or his attorneys knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available to the criminal defendant or his attorneys from another source. U.S. v. Grossman, 843 F.2d 78, 85 (2d Cir. 1988); Layton v. Phillips, 340 F. App'x 687, 689 (2d Cir. 2009) ("Documents that are part of public records are not deemed suppressed if defense counsel should know of them and fails to obtain them because of lack of diligence in his own investigation.") (quoting U.S. v. Payne, 63 F.3d 1200, 1208 (2d Cir. 1995)).

### Plaintiff Waived the AC/WP By Asserting Claims That Put His AC and WP At Issue.

Plaintiff has placed, as one of the core issues in this case, what he and his attorneys knew, should have known, or with due diligence could have known about Caban's arrest and prosecution. As a result, he has waived the AC and WP privileges. "Both attorney-client privilege and work-product immunity 'may implicitly be waived when [a party] asserts a claim that in fairness requires examination of protected communications.'" Deangelis v. Corzine, No. 11 Civ. 7866 (VM)(JCF), 2015 U.S. Dist. LEXIS 18207, *63 (S.D.N.Y. Feb. 9, 2015) (quoting U.S. v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991)); see also John Doe Co. v. U.S., 350 F.3d

299, 302 (2d Cir. 2003) ("It is well established doctrine that in certain circumstances, a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted." (citing U.S. v. Nobles, 422 U.S. 225 (1975)). In other words, the attorney-client privilege and work-product protection "cannot at once be used as a shield and a sword." Blizerian, 926 F.3d at 1292. But, that is exactly what plaintiff is doing here, and what Mag. Judge Gold has erroneously condoned by his ruling.

To defend themselves against plaintiff's Brady claim, defendants will have to show that plaintiff and his criminal defense attorneys knew, should have known, or could have discovered with reasonable diligence the circumstances of Caban's arrest. As a party to this litigation, plaintiff is biased (just as any party is) and has an incentive to deny knowledge of facts that would undermine his claim. Additionally, the passage of fifteen years could affect his memory of what he knew at the time. Judge Gold acknowledged that there could be a problem with recollection because "we're talking about events from 15 years ago". Ex. A at 14. Indeed, plaintiff claims that he has no memory of his arraignment during which both the prosecutor and his criminal defense counsel discussed some of the evidence found in connection with the Caban arrest. Thus, plaintiff's criminal defense attorneys are crucial witnesses in this case.

There are only two ways to discover what plaintiff's criminal defense attorneys knew – to review their file, and to ask them. As to both mechanisms of discovery, the Court has tied defendants' hands. As to the former, the Court has flatly denied defendants' motion to review the WP and AC in counsel's file. As to the latter, the Court has permitted defendants to ask counsel if they knew particular facts, but has prevented defense counsel from probing the answer in any way – which is the job of a competent attorney. For example, if plaintiff's criminal defense attorney states that he did not know that Caban hid the weapons at the same time that police were gathered outside the building,[3] defendants must simply accept that answer as true. As a result of Judge Gold's ruling, defense counsel can neither seek to refresh the attorney's recollection with documents from his file (to the extent his memory is faulty), nor explore whether the attorney may not be telling the truth. In both situations, defendants will be irreparably prejudiced.

(i) Inability to Refresh Recollection

Plaintiff's criminal defense attorneys represented plaintiff more than *fifteen* years ago, and their memories may have faded. Judge Gold's solution that "[he'll] direct the lawyer to be familiar with the contents of his file and to have his recollection as refreshed as possible at the time of the deposition" (id. at 17) is insufficient – and clearly erroneous. If the attorney inadvertently overlooked a note in his file, or forgets at his deposition something he read in his notes, his testimony may be inaccurate as to a crucial piece of evidence, and defendants will never be the wiser. Defendants should be able to use pertinent documents to refresh recollection.

---

[3] As Judge Gold noted, presumably this will be his testimony. "I assume the lawyer is going to say I didn't know those facts or you wouldn't be here because you've probably spoken to the criminal lawyer." Ex. A at 11.

(ii) Inability to Probe Truthfulness

Judge Gold's ruling presupposes that the criminal defense attorney will be honest and forthright. While one would certainly hope that a witness, particularly an officer of the Court, would be both honest and forthright, our judicial system is premised upon a party's right to cross-examine his adversaries' witnesses and test their truthfulness. Indeed, Courts in this district routinely instruct juries that no witness is presumed to be more credible than any other merely by virtue of their profession. For example, in Ashely v. City of N.Y., 14-CV-5559 (NGG), this Court instructed the jury that "[t]estimony of police officers must be treated the same way you treat that of any person. The uniform is entitled to no weight in deciding credibility and probative force." 14-CV-05559 (NGG), D.E. # 115. The testimony of an attorney is no different than that of a police officer; that is, it could be truthful, it could untruthful, and ultimately that is for a jury to decide. But, Judge Gold's decision erroneously prevents defense counsel from probing the credibility of plaintiff's criminal defense attorney, or impeaching any testimony he may give.

Here, if the criminal defense attorney knew the circumstances of Caban's arrest and failed to argue them when requesting permission to assert a third party culpability defense, or had sufficient information that proper diligence would have directed further investigation that he did not do, he might have an incentive to deny such knowledge. Indeed, when seeking the reversal of his conviction, plaintiff argued ineffective assistance of counsel on this precise basis. Ex. B (Plaintiff's January 27, 2011 letter to the Court), at Negron 1762.[4] The Court cannot simply assume that any witness, attorneys included, will be honest, and therefore strip defendants of their ability to question him further.

\*\*\*

Basic fairness requires that defendants have access to the AC and WP that plaintiff and his counsel have withheld because plaintiff put that AC and WP at issue in bringing this case. "The unfairness courts have found which justified imposing involuntary forfeiture generally resulted from a party's advancing a claim . . . while relying on its privilege to withhold from a litigation adversary materials that the adversary might need to effectively contest or impeach the claim." John Doe Co., 350 F.3d at 303; Favors v. Cuomo, 285 F.R.D. 187, 199 (E.D.N.Y. 2012) ("it would be unfair for a party asserting contentions of good faith to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions") (quoting Arista Records LLC v. Lime Grp. LLC, 2011 U.S. Dist. LEXIS 42881, (S.D.N.Y. 2011)). The Second Circuit has "made it clear that '[w]hether fairness requires disclosure has been decided . . . on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted.'" In re Cty. of Erie, 546 F.3d 222, 229 (2d Cir. 2008) (quoting In re Grand Jury Proceedings, 219 F.3d 175, 183 (2d Cir. 2000)). The context here compels disclosure.

---

[4] "[The Court allowed counsel the opportunity to renew an application with the third party culpability claim, defense counsel did not, when by all means, he could have, through a thorough investigation, discovered all these items found on the roof, in the apartment, on Guartan and in the backyard well before asking the Court could he present Fernando Caban as an alternative suspect to the crime."

Horn v. City of New Haven, 2019 U.S. Dist. LEXIS 144102, at *6 (D. Conn. Aug. 23, 2019) is directly on point. In Horn, a § 1983 civil rights case, Mag. Judge Spector held that plaintiff waived work product privilege relating to Brady material that was allegedly not disclosed in the underlying criminal case. The judge stated in pertinent part:

> To prove his Brady claim, the plaintiff will have to establish, inter alia, that he and his criminal trial counsel did not know or have reason to know of the allegedly exculpatory phone records at the time of his criminal trial. If there exists evidence establishing the plaintiff's or his criminal trial counsel's knowledge of the phone records at the time of the criminal trial, the defendants would likely seek to use that information to defend against the Brady claim. Therefore, to the extent that the plaintiff has withheld any work-product materials that concern his or his trial counsel's knowledge of the allegedly exculpatory phone records, such materials shall be disclosed to the Detective Defendants.

Id. See also Tennison v. City and Cty. of San Francisco, 226 F.R.D. 615, 623 (N.D. Cal. 2005) (implied waiver for documents relating to exculpatory evidence plaintiff and his defense counsel may have known about).

Plaintiff seeks to insert testimony that plaintiff and his attorneys were not aware of the supposed Brady information (sword), but plaintiff refuses to divulge the conversations, statements and notes relating to that information (shield). This is not permitted; Judge Gold's decision is clearly erroneous and contrary to law, and should be reversed.

**Plaintiff Expressly Waived the AC/WP Privileges By Selective Disclosures**.

The AC privilege is "generally waived by voluntary disclosure of the communication to another party." Schaeffler v. United States, 806 F.3d 34, 40 (2d Cir. 2015); Fed. R. Evid. 502. "When there has been a selective disclosure of attorney-client communications in the litigation, courts typically find the party has waived privilege as to all documents pertaining to the subject disclosed." Pearlstein v. Blackberry Ltd., No. 13-CV-07060 (CM)(KHP), 2019 U.S. Dist. LEXIS 45098, at *20 (S.D.N.Y. Mar. 19, 2019).

Here, plaintiff has selectively disclosed privileged matters in the underlying criminal proceedings (and related appeals and habeas actions). In connection with plaintiff's motions to set aside his conviction based on ineffective assistance of counsel (IAC), plaintiff and his criminal defense attorney submitted affidavits in the underlying case regarding their conversations regarding witnesses, plaintiff's and Caban's appearances, and mugshots.[5] In connection with the IAC motions, plaintiff and his criminal defense attorneys provided affidavits

---

[5] Ex. C, Kirshner Decl., dated April 13, 2012, ¶¶ 6-8, (Negron 1901-4); Ex. D, Negron Aff't, sworn to Apr.16, 2012, ¶ 7 (Negron1906-10); Ex. E, Negron Aff't., sworn Dec. 12, 2008, ¶ 37 ("Prior to trial, Negron specifically told trial counsel about these and other witnesses and their willingness to assist him. Upon information and belief, the source being Negron's conversations with trial counsel, counsel never even interviewed these witnesses.") (DEF1792-1803).

as to their respective knowledge concerning the circumstances of Caban's arrest and the invocation of the third party culpability defense.[6] And finally, in this case, plaintiff has selectively provided attorney notes and declarations concerning the line-ups which plaintiff called into question in his IAC motions.[7] These selective disclosures constitute a waiver of the AC/WP privileges in this action. Salomon Bros. Treasury Litig. v. Steinhardt Partners, L.P. (In re Steinhardt Partners, L.P.), 9 F.3d 230, 235 (2d Cir. 1993) ("[t]he client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit.) (quoting Permian Corp. v. United States, 665 F.2d 1214, 1221 (D.C. Cir. 1981)); Graziose v. United States, 03 Civ. 8109 (RWS), 2004 U.S. Dist. LEXIS 742, at *2 (S.D.N.Y. Jan. 21, 2004) ("When a convicted defendant raises an argument that his counsel was ineffective and bases that contention on privileged communications with his attorney, the attorney-client privilege is waived as to the contents of those discussions."). In other words, information once disclosed to a party opponent waives the attorney-client privilege as to future proceedings. Salomon Bros, 9 F.3d at 236. Disclosure of confidential communications is inconsistent with the attorney-client relationship and almost invariably waives the privilege "with respect to the world at large; selective disclosure is not an option." Patrick v. City of Chi., 154 F. Supp. 3d 705, 711 (N.D. Ill. 2015) (quoting Burden-Meeks v. Welch, 319 F.3d 897, 899 (7th Cir. 2003)).

At least one court has held that there is a waiver in a subsequent § 1983 suit where plaintiff challenges the effectiveness of his counsel. In Patrick, for example, in a § 1983 wrongful conviction suit, the district court held that plaintiff broadly waived AC/WP privilege with respect to conversations and related matters raised in his state court ineffective assistance of counsel petition. Patrick, 154 F Supp. 3d at 712-17. In response to this argument, as defendants presented it to Judge Gold, plaintiff cited to Deangelis v. Corzine, 2015 U.S. Dist. LEXIS 18207, at *64 (S.D.N.Y. Feb. 9, 2015) for the proposition that "placing a matter at issue in one action generally will not result in waiver of protection in a separate action". D.E. # 35 (Pl. Opp. at 6) quoting Deangelis. But, plaintiff omitted the very next sentence from Deangelis - "[t]his is because it is not likely that unfairness or prejudice to a litigant in one action will result from reliance on privileged material in another, unless the two are closely intertwined." Id. But here, defendants are subject to unfairness and prejudice by the privilege claims plaintiff is asserting

---

[6] Ex. E, Negron Aff't, sworn Dec. 12, 2008, ¶ 31 (DEF1792-1803) ("The prosecution never disclosed to the defense that Caban, who lived in the same building Negron lived (and where other witnesses saw the shooter enter) was arrested for possessing the gun used in the shooting."); Ex. F, Negron letter, dated March 16, 2009, at 1-2 ("The prosecution now contends … that they were "informed by [ADA] O'Connor that defendant was informed of the arrest of his neighbor, Mr. Caban, and the recovery of weapons … and that this issue was discussed in court … This is simply not true.") (Negron 5574-5577); Ex. G, People v. Negron, 2005 QN006099 (Feb. 8, 2008), at 3-6 (per prosecutor: "a lot of weapons were recovered from the rooftop. … the complaining witness was shot with what we believe was a .45 caliber weapon, and there was a .45 caliber weapon found in a backyard. … we are currently concluding tests to find out if that is the .45 caliber that the defendant used to shoot the complaining witness.") (Negron 0627-0634).

[7] Ex. E, Negron Aff't, sworn Dec. 12, 2008, ¶ 12 ("Negron was deprived of the effective [AIC] by virtue of his trial attorney's failure … [to] call as a witness the attorney who represented Negron during the lineup …") (DEF1792-1803); Ex. H, partially redacted handwritten attorney notes and Kilduff Decl. dated Apr. 13, 2009 regarding lineup (Negron 8207-8218).

here as the two cases are closely intertwined. Judge Gold did not address this point at all in his decision.[8]

**Substantial Need Also Justifies Disclosure.**

Defendants should also be entitled to the documents under Fed. R. Civ. P. 26(b)(3), which permits discovery of work-product materials where the party seeking such discovery "has substantial need of the materials in the preparation of the party's case" and is "unable without undue hardship to obtain the substantial equivalent of the materials by other means." This standard applies only to ordinary work product, but not core word product (the mental impressions, conclusions, opinions, or legal theories of an attorney)[9]. Here, ordinary work product would be notes in the criminal defense attorney's records such as "client states his brother-in-law hid weapons on roof while police were outside", while core work product would be statements such as "based on client's statement, I conclude that xyz". For all the reasons set forth above, defendants have substantial need for the ordinary work product documents plaintiff and his attorney are withholding.

**Judge Gold's Decision Draws An Unwarranted Line of Distinction.**

As set forth above, Judge Gold ruled that plaintiff's criminal defense attorney must answer questions, such as "Did you know X" or "Were you aware of Y". If the attorney answers "yes", then defendants can ask "did you learn X from a source other than plaintiff", and the attorney must answer that question. While a "no" answer will necessarily reveal that the information was communicated to the attorney by plaintiff, defendants cannot ask that question directly. Id. at 16-17, 24-27. But Judge Gold did not extend this same limitation to the documents of plaintiff's criminal defense counsel. For example, plaintiff's criminal defense counsel might have a note in his file that reads "client states that his brother-in-law discarded .45-Caliber ammunition on roof". Assuming Judge Gold's limitation on testimony is appropriate (defendants dispute this as set forth above), at a minimum, the same reasoning should entitle defendants to a redacted version of plaintiff's criminal defense counsel's imaginary note, which would read "[redaction] brother-in-law discarded .45-Caliber ammunition on roof". But, Judge Gold's decision precludes defendants from obtaining even this. To the extent this Court affirms Judge Gold's decision (which it should not do as set forth above), at a minimum, the Court should order plaintiff and his counsel to produce WP and AC documents in redacted form to remove the source of information, but leave the underlying fact.

\*\*\*

The core issue in this case is what plaintiff's criminal defense attorneys knew. Yet, Judge Gold's decision deprives defendants of a meaningful opportunity to probe that subject matter or question in any way the truthfulness of these attorneys. His decision is clearly erroneous and

---

[8] There was a very brief discussion of the fact that certain redacted documents turned over in *this* litigation (attached hereto as Ex. H) do not constitute a waiver (see Ex. A, at 17-18), but no discussion whatsoever of plaintiff's prior disclosures in the underlying criminal court proceeding and related appeals, which documents are attached hereto as Exhibits C-G.

[9] In the Second Circuit, core work product "is to be protected unless a highly persuasive showing of need is made." U.S. v. Doe (In re Grand Jury Proceedings), 219 F.3d 175, 190 (2d Cir. 2000) (internal citations omitted).

contrary to law. Moreover, if, as plaintiff claims, his attorneys never knew or had reason to know the circumstances of Caban's arrest (i.e. when he hid the weapons, what caliber ammunition was recovered, etc.), then plaintiff has nothing to fear from the disclosure of the documents and testimony sought. On the contrary, if those records do suggest that plaintiff's criminal defense attorneys knew, should have known, or could have known with reasonable diligence the circumstances of Caban's arrest, then defendants need to have access to that information to defend against this case. For all these reasons, the Court should reverse Magistrate Judge Gold's decision and order the disclosure of the previously withheld documents.

Respectfully submitted,

/s/ *Elissa Fudim*

Elissa P. Fudim
Senior Counsel